IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LASHONDA HARVEY, as        *
Administrator of the Estate of
ELIJAH HARVEY,           *

     Plaintiff,          *

vs.                  *      CASE NO. 4:19-CV-46 (CDL)

WILLIAM GARY YOCHUM, JR. and    *
JUSTIN MYERS,
                    *
     Defendants.
                    *

O R D E R

     Officers William Yochum and Justin Myers arrested Elijah Harvey after he refused to return his girlfriend's car keys and exit her vehicle. During the arrest, Harvey suffered an injury to his knee. Plaintiff, the administrator of Harvey's estate, now brings claims against both officers under 42 U.S.C. § 1983 and state law.[1] Defendants moved for summary judgment on Plaintiff's § 1983 claims based upon qualified immunity. For the following reasons, Defendants' motion (ECF No. 38) is granted as to Plaintiff's § 1983 claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and those claims are dismissed without prejudice.

---

[1] Harvey died in 2020 for reasons unrelated to the subject of this litigation.

STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the record establishes the following.

Yochum arrived at Club Café in Lumpkin, Georgia on March 18, 2017 to respond to an altercation between Harvey, a 67-year-old black man, and his girlfriend, Mary Webb. Webb Dep. 42:17-24, ECF No. 37-1; Yochum Decl. ¶¶ 3-4, ECF No. 38-1. Specifically, Harvey was sitting in Webb's car and refused to return Webb's car keys. Webb Dep. 42:17-19. Yochum was aware of this dispute prior to

approaching Harvey.[2]  Yochum Decl. ¶¶ 4, 6.  When Yochum arrived,
he approached the vehicle and asked Harvey if he had Webb's keys.
*Id.* ¶ 6.  After Harvey confirmed that he did, Yochum asked Harvey
to give him the keys multiple times.  *Id.* ¶¶ 6-7; *see* Webb Dep.
80:16-81:4 (affirming that the officers asked for the keys at least
once).  Harvey refused.  Yochum Decl. ¶ 6.  Harvey also refused
Yochum's subsequent requests to exit the vehicle.  *Id.* ¶ 7; Spencer
Dep. 48:6-8, ECF No. 37-2.  Yochum became suspicious that Harvey
was intoxicated because he was located in an area where officers
often had trouble with intoxicated individuals and he was "cursing
and acting agitated."  Yochum Decl. ¶ 5.   Yochum also smelled
alcohol as he approached the vehicle.  *Id.* ¶ 6.

Yochum told Harvey that he would need to remove Harvey from
the vehicle if Harvey did not exit it.  *Id.* ¶ 7.  Harvey again
refused to exit the vehicle.  *Id.*  Yochum then began pulling Harvey
out of the vehicle, and Harvey tried to bite him.  *Id.* ¶ 8.  Harvey
braced himself in the vehicle so as to be more difficult to remove.

---

[2] Plaintiff disputes that Webb called the police, but it is undisputed
that Yochum knew about the underlying dispute before trying to arrest
Harvey.  Webb Dep. 42:17-24 ("I told some guy or another [to] tell the
police to come on down there."); Yochum Decl. ¶ 6 ("I then made contact
with Harvey at the car to continue my investigation.  I asked Harvey if
he had Webb's keys and he said Yes.  I then asked Harvey to give me the
keys, but he refused, cursing at me in the process.").  Shakira Spencer,
Webb's granddaughter, appears to state that officers arrived at the scene
without being contacted by anyone.  Spencer Dep. 48:9-14, ECF No. 37-2.
But-at least in those portions of the deposition cited by the parties-
Spencer does not state that Yochum knew nothing of the underlying dispute
before approaching or arresting Harvey.

*Id.* Myers arrived around this time and assisted Yochum in removing Harvey from the vehicle. *Id.* Myers and Yochum successfully removed Harvey from the vehicle, but as they did, all three individuals fell to the ground. *Id.* Yochum landed on top of Harvey. Yochum Dep. 56:6-8, ECF No. 46.

The officers tried to handcuff Harvey after helping him stand up, but Harvey remained uncooperative and resisted. They handcuffed one wrist, but Harvey positioned his other wrist underneath his body and against the car so that the officers could not handcuff it. Yochum Decl. ¶ 9. Harvey also began to sling his handcuffed arm around. *Id.* Yochum decided to "take Harvey to the ground" to complete the arrest. *Id.* The officers "slammed [Harvey] on the ground," and the officers put a knee on Harvey's back and applied their body weight to him as they secured Harvey in handcuffs. Spencer Dep. 40:16-24. Harvey subsequently complained about an injury to his leg. Yochum Decl. ¶ 11. Because of his injury, the officers had to carry Harvey to the police car. Yochum Dep. 58:4-9. EMS met Harvey and the officers at the police station. Yochum Decl. ¶ 11; Yochum Dep. 60:16-20. EMS was unable to assess Harvey's injuries, however, because Harvey was being combative. Yochum Decl. ¶ 12. Later medical assessment revealed an objectively identifiable injury to Harvey's knee. Harvey

suffered chronic knee pain stemming from this injury for the remainder of his life.[3]

DISCUSSION

Plaintiff brings § 1983 claims against Yochum and Myers for false arrest in violation of the Fourth Amendment, excessive force used during that arrest, and deliberate indifference to Harvey's serious medical need in violation of the Fourteenth Amendment. Defendants seek qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)). Thus, to overcome qualified immunity,[4] Plaintiff must demonstrate that (1) the officers violated Harvey's constitutional rights, and (2) Harvey's rights were clearly established at the time of Defendants' alleged misconduct. *Id.* at 1297.

---

[3] Plaintiff cites evidence establishing that Harvey told officers that he hurt his leg, but Plaintiff cites no medical evidence establishing that Harvey broke his knee or that Harvey suffered lifelong knee pain because of his injury. Plaintiff simply makes these unsupported statements in her response brief.
[4] It is undisputed that Defendants were acting within the scope of their discretionary authority.

I.   **False Arrest**

Defendants contend they are entitled to qualified immunity regarding Plaintiff's false arrest claim because arguable probable caused supported Harvey's arrest.   Generally, "[a] warrantless arrest is constitutional under the Fourth Amendment only when it is made with probable cause." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1293 (11th Cir. 2018).   "Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." *Gates*, 884 SF.3d at 1298.   "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009)).

Here, Defendants argue they had arguable probable cause to arrest Harvey for criminal trespass, public intoxication, and obstruction.   A person commits criminal trespass under Georgia law when he "knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person" or when he "[r]emains . . . within the vehicle . . . of another person after receiving notice from the owner [or] rightful occupant . . . to depart."   O.C.G.A. § 16-7-21 (a), (b)(3).   A person is guilty of public drunkenness when he "appear[s] in an

intoxicated condition in any public place" and that intoxicated condition "is made manifest by boisterousness, by indecent condition or act, or by vulgar, profane, loud, or unbecoming language." O.C.G.A. § 16-11-41(a). Finally, a person commits obstruction when he "knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties." O.C.G.A. § 16-10-24(a).

Defendants had arguable probable cause to arrest Harvey. The undisputed facts demonstrate that Yochum reasonably believed Harvey was sitting in Webb's car without her permission and that Harvey refused to return Webb's keys when Yochum requested them. *See* Yochum Decl. ¶ 6 ("I asked Harvey if he had Webb's keys and he said Yes. I then asked Harvey to give me the keys, but he refused."). Thus, arguable probable cause existed to arrest Harvey for criminal trespass. Yochum also had arguable probable cause to arrest Harvey for public intoxication because he could smell alcohol on Harvey, Harvey was sitting in a car in a public location, and Harvey was cursing and acting agitated in the vehicle. *Id*. ¶¶ 5-6. Finally, the undisputed facts demonstrate that Yochum had arguable probable cause to arrest Harvey for obstruction, as Harvey repeatedly refused to return the keys to Yochum or exit the vehicle upon Yochum's request and because he resisted arrest. *Id*. ¶¶ 6-8.

Plaintiff points to no evidence creating a genuine factual dispute as to whether Yochum had arguable probable cause to arrest Harvey. Plaintiff contends that Yochum did not have arguable probable cause to arrest Harvey for trespass because Yochum did no investigation to determine whether Harvey owned the car. Plaintiff, however, cites no evidence disputing that someone informed Yochum that Harvey was sitting in Webb's car and refused to let her leave or return the keys. Plaintiff also argues that Yochum lacked arguable probable cause to arrest Harvey for public intoxication because Yochum did not formally administer a sobriety test, but Yochum smelled alcohol on Harvey and observed behavior that, in his experience, indicated intoxication. This is sufficient. Defendants are entitled to summary judgment on Plaintiff's § 1983 false arrest claim based upon qualified immunity.

## II. Excessive Force

Plaintiff argues that Defendants used excessive force in forcefully removing Harvey from the vehicle, taking him to the ground, and placing a knee on his back as Defendants restrained him. The Court finds it unnecessary to decide whether Defendants used constitutionally excessive force because clearly established law would not have put Defendants on notice that they violated Harvey's rights. To prove a constitutional right is clearly established, a plaintiff can show that (1) a "materially similar

case has already been decided;" (2) "a broader, clearly established principle should control the novel facts of a particular case;" or (3) "the case 'fits within the exception of conduct which so obviously violates [the] Constitution that prior case law is unnecessary.'" *Waldron v. Spicher*, 954 F.3d 1297, 1304-05 (11th Cir. 2020) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (alteration in original)).   The "salient question . . .is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (cleaned up) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Defendants contend that Harvey resisted arrest by clinging to the car, attempting to bite the officers, and swinging his handcuffed hand at officers.   Plaintiff admits that Harvey resisted arrest when Defendants began arresting him, and Plaintiff cites no evidence creating a genuine fact dispute as to whether Harvey continued resisting the officers during the arrest.   *See* Pl.'s Br. in Resp. to Defs.' Mot. for Summ J. 8, ECF No. 39 (admitting that "Harvey did initially try to resist the arrest").   Plaintiff cites no binding precedent finding a constitutional violation when officers bring an arrestee to the ground when the arrestee is resisting in the manner Harvey resisted arrest.   Further, Defendants' conduct is not so clearly egregious that it would give Defendants fair warning in the absence of factually similar binding

precedent.  As such, Defendants are entitled to qualified immunity on Plaintiff's excessive force claim.

## III. Deliberate Indifference

Finally, Defendants claim they are entitled to qualified immunity on Plaintiff's deliberate indifference claim because Defendants responded sufficiently to Plaintiff's medical needs and because any constitutional violation suffered by Harvey was not clearly established.   "To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Gilmore v. Hodges*, 738 F.3d 266, 273-74 (11th Cir. 2013) (alternations in original) (internal quotation marks omitted) (quoting *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010)). To prove deliberate indifference, Plaintiff must show Defendants had "(1) subjective knowledge of a risk of serious harm; (2) [a] disregard of that risk; (3) by conduct that is more than [gross] negligence." *Id.* at 274 (alteration in original) (quoting *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)).

Defendants do not contest that Harvey's injured knee was a serious medical condition, but they argue that they did not demonstrate deliberate indifference to Harvey's injury. Defendants radioed EMS and took Harvey to the police station, where

EMS attempted to evaluate him.  Harvey, however, refused to cooperate, and the EMS professionals were unable to fully evaluate his injuries at that time.  Plaintiff contends that Defendants should have called EMS to the scene of the arrest for an on-site evaluation.  Plaintiff, however, cites no legal precedent for the proposition that failing to do so constitutes gross negligence. Defendants' response to Harvey's injury was reasonable and prompt, particularly when Harvey's injury reasonably did not appear to be life-threatening.  Under these circumstances, Defendants are entitled to summary judgment as to Plaintiff's deliberate indifference claim based upon qualified immunity.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 38) is granted in part.[5]  Judgment shall be entered in favor of Defendants on Plaintiff's § 1983 claims.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are dismissed without prejudice.

IT IS SO ORDERED, this 26th day of October, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

[5] Plaintiff also filed a motion for a hearing.  The issues presented by Defendants' motion for summary judgment are straightforward, and a hearing is unnecessary.  Plaintiff's motion (ECF No. 41) is accordingly denied.